The next matter, No. 24-1424, Beijing Abace Biology Co., Ltd. v. Chen Hongzhang, et al. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, Willard Shi on behalf of the appellants. And, Your Honor, if I might reserve two minutes on rebuttal? You may. Thank you, Your Honor. The question on the appeal in this matter is whether the District Court erred by granting summary judgment to the defendants when the defendant, Zhang, admittedly signed multiple agreements requiring her not to compete, and yet four months after she terminated her employment with Beijing Abace, she in fact, and now admittedly, competed. There are a couple of issues that have to be answered in conjunction with that. First, are the governing agreements enforceable? Or, I would say more precisely, is any of the governing agreements enforceable? Because if just one of them is, then the defendant admittedly violated it. Second, whether nonpayment of post-employment compensation is a defense to a claim of breach when the employee admittedly did not notify her employer of her desire to terminate any such agreement before she breached, before she competed. These issues all have to be decided by Chinese law, and more specifically, in the event there is any kind of inconsistency with the courts in China, by Beijing law. That is unrebutted. The one and only expert who has spoken on this issue in this case has indicated that in the event of an inconsistency, Beijing law governs. Counsel, can I ask you to start on the issue of whether Dr. Zhang was a senior employee? From what I could tell in the briefs, it seems like you agree that she's only subject to the non-competes if she's a senior employee. Is that correct, or do I have that wrong? That is correct, Your Honor. With one caveat being the law also states that if she was subject to confidentiality provisions, and she had access to confidential information, then she was also subject to an enforceable non-compete. And the second caveat, I think if I'm understanding the record, you could be a senior employee and not subject to it unless you're a senior management personnel or a senior technical personnel. Correct, Your Honor. Yes. So on that issue, Your Honor, it is undisputed that when Dr. Zhang first began her employment in 2014, she did not sign what is known as a cater agreement, and that she only signed that cater agreement when she reached a certain level of employment. The district court said that because the cater agreement says all employees of Creative Dynamics are bound by that agreement, therefore it concluded that just because one signs a cater agreement doesn't necessarily mean one is a senior employee or senior management or senior technical personnel. I believe the record shows, and certainly at least for summary judgment purposes, that when one is presented with a cater agreement only after multiple promotions, that that demonstrates certainly an intent by the company that only senior level employees are subject to the cater agreement, despite some loose language in the agreement itself that indicates it applies to all employees. Go ahead, Judge Salia. You referred to some loose language. Is there any language in the agreement that contradicts that language? Your Honor, there is no language in the agreement that contradicts that language, but with that said, there is ample evidence in the record which shows that not all employees are presented and have to sign the cater agreement. Therefore, if not all employees are required to sign it, it can't possibly bind all employees of the company. Well, here's what was troubling me about that argument. As I read the cater's agreement, and I may be wrong, but included in people who sign that are senior cadres, and also included are senior executive personnel. And senior executive personnel are defined as those who, quote, have the right of management, which would therefore imply that senior cadres do not have the right of management. And if they don't have the right of management, then although they may be senior, are they senior management personnel who it seems that they don't fit? Your Honor, there is a couple sections in the cadre agreement which certainly use different words, senior executives or cadre office holders. I would submit, Your Honor, that the agreement itself, when you look at the various different responsibilities of each individual who arises to, I'll even say, the lower of the two levels, the senior cadre, satisfy the definition under Chinese law as to whether that individual can be bound by a non-compete. So I think you're saying all senior cadres are necessarily senior management personnel or senior technical personnel? Yes, for purposes of whether they can be bound by a non-compete. And where do you get that link that all senior cadres are necessarily senior management personnel or senior technical personnel? When you look at the rights and responsibilities given to these individuals, Your Honor, even on the basis of the agreement itself, it sets forth their duties and responsibilities. But if they have the right of management, they're senior executive personnel. That's correct. So that would mean that there are senior cadres who do not have the right of management. That is correct, Your Honor, yes. And so how could they be senior management personnel? Because that's not the only, under Chinese case law, that's not the only requirement as to whether or not one satisfies, I'll say, the threshold level to have a non-competition agreement binding. The Chinese case law, it certainly, while it references at times senior technical personnel, senior management, or senior executives, it sets forth various different considerations as to whether or not one can be bound. I certainly agree with Your Honor that the right to hire and fire is one such consideration, but that's not meant to be an exclusive consideration. I think if you look at the case law in totality, the idea has this person rose to a certain level? When one considers their level, their duties, and their responsibilities, and their access to confidential information, whether or not that employee is someone who should be bound by a non-competition agreement. Isn't there what we would call a statute here that defines those three categories of senior management personnel? It says the people who can be bound by a non-compete are those three categories, senior management, senior technical, and others who are obliged to keep confidentiality. That's correct, Your Honor. It certainly identifies those three categories. And that, doesn't that, given that it's a civil law regime, doesn't that trump the case law? It would trump the case law if the case law tried to deviate from those three categories. I would submit, Your Honor, it does not trump the case law when the case law seeks to define what constitutes an individual who would fall within those three categories. Counsel, let me ask you something else. When we started on this issue, you said that after an individual has been promoted numerous times. I thought, and please correct me if I'm wrong, but I thought the record said was that Dr. Zhang's supervisor said she hadn't been promoted. Is there something in the record that shows that she had been promoted? Yes, Your Honor. The record shows that when she was promoted to the fifth level, then she was required to sign the cadre as a higher officer's agreement. That's the testimony of Ms. Serena Liu. It's found at JA-263, page 18 through 19. Promoted to the fifth level of what? Of the company, Your Honor. So she started at the second level, and when she was eventually promoted to the fifth level, she was asked to sign, and she did sign a cadre agreement. She signed it not once, but twice a few months later. The record further shows that another individual, just to place this in context, she was at the sixth level when she was presented with the cadre agreement. That individual is someone who, when you look at her duties and responsibilities, especially as it relates to this case, certainly qualifies as a senior manager. The question, which the district court never addressed, is whether or not someone who was promoted to the fifth level, whether an inference can be made that that individual qualifies as senior management. The district court didn't address that issue because it found that because the agreement itself states that it applies to all employees, it did not believe that analysis was necessary. I submit that's an error. When we take on the task of understanding and trying to apply the law of another country, we often look to expert testimony from someone familiar with that. I got the impression in reading the brief that the expert testimony was somewhat limited to that offered by the other side. Your Honor, I disagree with that. There was only one individual, Mr. Shibai, X-I-B-A-I, Gao, G-A-O, who submitted declarations as to what Chinese law is. He specifically indicates the way that Chinese courts are structured from the high people's court on down. He specifically indicates those authorities that are relevant to this case. He also indicates that when there is a split in decisions, because it was the defense that argued, especially on the issue of whether or not one had to pay post-employment compensation, the defense argued that our position was the minority, that their position was the majority. They acknowledged that there was a split in the decisions. Mr. Gao offered in his declaration that you have to look at Beijing law before this case would have been heard. In fact, court was initially filed before it was withdrawn in favor of this case. But as I understand, he didn't offer any testimony that you would point us to on whether she was a senior management personnel. He did not offer testimony on that subject, Your Honor. That's correct. Based upon the way that the expert issue was addressed by the court below, he was not asked to apply facts. Does that create any problem for you if you have the burden of proof? Not on summary judgment, Your Honor. On summary judgment, I believe I get certainly every fair inference, every reasonable inference as to whether or not she rose to the level of senior management. I think one of the inferences that can be drawn is because when one is promoted up to a certain level and one is finally then presented with an agreement that identifies her as a senior cadre, senior executive, et cetera, that I think the inference can be drawn that that necessarily means that she rises to the requisite level to be able to be bound by such an agreement. Thank you, counsel. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Good morning, Your Honors. My name is Zachary Stillings. On behalf of defendants, appellees, Chunhong Zhang and MTC BioLabs, thank you for your time this morning. I want to start off where my colleague, Mr. Shi, ended, which is the expert testimony in this case. The testimony here, upon which the district court partially based its decision, included a paragraph that says, the law as interpreted by the courts in Beijing shall control. That's about the extent of it, and Your Honors made an astute question with respect to how we interpret civil law, that is, as an American court looking to the law of another country. Here, the main thing that the court should be looking at is whether the district court complied with Rule 44.1 in its analysis of Chinese law. In other words, when my colleague states that the testimony of his expert was unrebutted, whether that in and of itself will govern this dispute. Under Rule 44.1, Your Honors, the answer is no. Rule 44.1, made in 1966, changed our analysis of foreign law from one that viewed foreign law as fact to one that views foreign law more akin to how a court sitting here might view the laws of California or from Ohio. A court may consider any relevant material or source whether admissible. And we've cited several cases in our briefing to discuss this point, but what you saw with the district court's analysis here was that it looked at the expert decisions, viewing the law as interpreted by several courts in Beijing, and what it did was it took those and it also took other external sources. That is, the Judiciary Resources website that we cited, which is from the United States Judiciary, looking at the law of other countries. The reason I bring this up is because Appellant's entire case here hinges on the court finding that China has a system in some way, shape, or form that is akin to ours. That is, that courts in Beijing somehow have binding authority over a court that would exist there. Unfortunately, that's not the case. As the district court properly noted here, in the civil system, the court's first task is to look to the relevant statutes. Judge Kayada, you had mentioned earlier that there is a statute that governs what types of employees might be governed by a non-compete or non-solicitation agreement. That is Article 23 and Article 24 of the Labor Contract Law, which defines the types of individuals that can be governed by such a restrictive covenant. Here, of course, we don't have that. We have testimony on the record, a great deal of it, in fact, concerning Dr. Zhang's role at Beijing A-Base. Her supervisor, Ms. Li, testified that her role was nothing special. What she did was customer service. That is on the Joint Appendix 288 to 289, Your Honors. We have another of her bosses, Linda Tang, who testified that before she began her two-and-a-half-year stint at Beijing A-Base, Dr. Zhang was a recent graduate with no experience. A recent graduate with no experience is not anywhere close to the type of senior management personnel that Chinese law requires an employee to be before being subjected to restrictive covenants. I understand you're saying if we want to know the three categories, you have to be one of the three categories to be bindable. But then to the extent those categories aren't facially unambiguous, there's nothing that anyone is pointing us to in the statute that tells us exactly what a senior management personnel is. So wouldn't we then look at the case law to see if it sheds some light on what senior management personnel are? And in that context, what's the relative role of Beijing over other regions when it comes to not defining what the categories are, but shedding light on what they are? Certainly, Your Honor. I would posit the answer is there is no role. Now, perhaps Beijing has a bit more of a persuasive authority. But the point of our briefing is that under Chinese law, no case law has the type of binding authority that we have here in the United States. I would point Your Honors to a quote from the late Justice Scalia. He was talking about the role of civil systems and how cases are to be viewed. This case was actually, or this quote actually comes from in the Western District of Texas case, talking about Chinese law in specific. The quote is as follows. There is no stare decisis requirement in the civil law system where it is the text of the law rather than any prior judicial interpretation of that text, which is authoritative. Prior decisions are consulted for their persuasive effect, much as academic commentary would be. But they are not binding. Binding being a word he emphasized. And as that Western District of Texas case holds, and I'm happy to provide the citation for Your Honors, it's Nautilus v. Icahn Health and Fitness 304 Federal Sub 3rd 552. Would you send us a Rule 28J letter on that, please? I'm sorry, Your Honor? Would you please send us a Rule 28J letter? Yes, Your Honor. Absolutely. I'll be happy to do that. The point of that, though, Your Honors, is that in a very similar context here, that court looked to determine what the persuasive role might be for precedent under the Chinese judicial system, finding that as a civil law country, what the court's role was, and this is, I believe, what the district court did here, what its role was was to determine the law. And to determine the law, first looking at the statutes, and then, second, by finding factually analogous cases upon which to base its decision. So we've done a lot of talking today about senior employees and what does that mean. Well, the trial court found a number of cases it found to be factually analogous. One in particular that struck me was the Qingdao Xingu Iron Tower case at the Joint Appendix 1213, finding that forum agreements, much like the Cadre's agreements in front of Your Honors, are not able to bind people just by virtue of saying that you're a senior employee. And this makes eminent sense, given the testimony from Dr. Zhang herself, who said that her role at the company was to receive sales orders from salespeople, in other words, not direct customer contact. She would then Google or Baidu, the Chinese equivalent of Google, to find vendors who could sell her those services, at which point she would get back to the salesperson, who would then talk to the customer. When comparing that to the various cases that the district court analyzed, the court will see that that type of information is information within the public domain, and it is not sufficient to make Dr. Zhang a senior employee within the meaning of those statutes. But I remind the court that not only is the issue of senior management or whether she can even be bound for the court, the district court found for her on four independent bases, any of which is sufficient for the court to find in her favor. Can I ask you about one of the other bases that you addressed, which is the requirement that specific compensation be specified in the non-compete, and I believe there's even Beijing law that says that without that, the non-compete is not enforceable. Is that correct? Yes, Your Honor, and I appreciate the question. That case in particular was called Beijing Golden Capital, which my colleagues did not address until their reply brief in this matter for the first time. And in that case, Beijing Golden Capital, what it found was that because the contract did not specify the amount of post-employment compensation, there was never an agreement with respect to non-compete as a going-forward basis. So put another way, I want to take a step back here. Chinese law is somewhat different than our own in that it does require both a pre-termination agreement that specifies the amount of money to be paid to an employee, and it also requires that that compensation be paid to the employee afterwards. And both of those things were failing here. The argument is made, though, that that is conditioned on the employee giving some sort of notice that wasn't given here. Yes, Your Honor, and I would respectfully disagree with those arguments. There is case law, and this is not a statutory matter, for the most part, and I'll come back to that in a second. But as to that specific notice requirement, there are multiple cases that are on the record in which the courts found that by forming a new company after three months of not having been paid, that itself was sufficient notice to void any non-compete agreement that may have been in place. But I guess if we're just looking at the first part of it, do you even need to do that analysis if there's no agreement in place because there was never compensation specified? How does that work under Chinese law, in your view? Absolutely not. The court here, the district court, could have stopped any number of the bases it found in favor of Dr. Zhang here. So to your question, the failure of the contract to specify a post-employment compensation number was independently sufficient for her to not have any further contractual obligations. And again, that is that Beijing Golden Capital case that comes from Beijing. That's somehow more persuasive. But there is also, as Judge Cato noted, cases where there is no payment made, and for three months, that's the kind of yardstick that these cases use. Three months. After three months of not being paid, you are able to take new employment or to start a new job. And those are the ways in which the district court found here. I want to address one other thing I said I would get back to, and I'm promising to do that. That is that there is a bit of statutory authority for that three-months proposition. I would point the court to Article 66 of the Contract Law of the People's Republic of China. I can find that here real quick. Well, regardless, it is in the Joint Appendix. But Article 66, what that says is that a party that breaches first cannot then require another party to perform. So in that sense, it is similar to the United States law. And the phrase, this is quoted in the district court's opinion, is that the breach is prior. So perhaps it's a translation issue, but what that means is that when you have failed to pay an employee their post-termination compensation, you are in breach, and therefore cannot require the employee to comply with something when you breach first. And in that respect, the statutory reading in the Chinese law is very similar to what we have here in the United States. I'd like to address very briefly the final. I just want to ask you a factual question, which I'd ask your opposing counsel. You had said at page 4 of your brief that Dr. Zhang was never promoted from her work, nor did Dr. Zhang ever receive a raise. But opposing counsel says that she was promoted multiple times, which is why it wasn't clear. Can you explain the discrepancy between your positions? Yes, Your Honor. I think Dr. Zhang was the one who testified that she had never been promoted. And I think that there were some potentially disagreements as to what promotion to the fifth level means. There is, I believe, a colloquy during the hearing for the motion on summary judgment in which the district court judge specifically asked, what does that mean? And there was never a full answer to my recollection on that issue. And so perhaps that is somewhere where this promotion to the fifth level may mean something. But Dr. Zhang testified to her understanding that she had not been promoted. With Your Honor's... But for summary judgment purposes, wouldn't we have to assume the contrary? The court could assume that. And that's an entirely fair point. At the same time, having been promoted doesn't necessarily make her the type of senior management personnel that is subject to non-compete provisions in the first place. And even if Your Honors disagree on that point, the other three points, that is, blanks in the agreement, the failure to specify compensation amounts following the termination, and then finally, the non-payment of compensation. All of those things are things that could be decided on summary judgment, notwithstanding the issue of whether she was sufficiently senior. Now, I would say, given all the testimony we've discussed, that no reasonable juror could infer she was sufficiently senior. But in that way, I would argue that the district court made the correct decision. But I understand Your Honor's point, certainly. Your Honors, I see that my time is gone. I appreciate your time. As a matter of personal note, this is my first circuit argument, so I greatly appreciate the opportunity. Judge Salia, do you have anything further? No, I'm fine. Thank you, Counsel. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record? He has a two-minute rebuttal. Thank you. Willard Shea for the Appellant. A couple quick points, Your Honor. First, that's to the governing law. The issue is what law is persuasive. And even the citations that the appellee provides in its brief, specifically to an article written by Liu, L-I-U, they say Chinese judges do take precedence into consideration. The guiding opinions principle that, again, the appellees cite in their brief, says you look at the higher court, you look at the highest court, and then you look at the relevant jurisdiction, the jurisdiction in the same place. And our expert certainly says you look at the highest court and you look at the jurisdiction in which the case is found. So I would submit that under any theory, whether by the defense's articles, their citation, the guiding principles, or to the plaintiff's expert, Beijing law is the one that courts should look at. Counsel, but what about the fact that under Beijing law, the contract needed to specify the compensation for the non-compete to be binding, and it didn't do that here? Your Honor, I acknowledge there is one case and only one case that the appellees have cited, which indicates that in that instance where not only did the employer not pay post-employment compensation, but also the employer didn't pay the employee what was due to him while he was actually working for the company, that in that instance the court found the agreement was unenforceable. Do you have any contrary cases saying that it's from Beijing that say it's okay to leave out the amount of compensation? I'm sorry, I apologize, Your Honor. We have numerous authorities including a notice from the Shanghai People's Court, a notice from the Beijing High People's Court, minutes of the symposium by the Beijing People High Court, the China Civil Code, and the Li Meng case, all of which say that the failure to specify post-employment compensation is my words, not the words of these notices, is not a free pass, that the agreements are still binding, and that the employee needs to give notice of termination before they're allowed to compete. But it bears on, if the employer thought that the Cadres Agreement made someone a senior management level and therefore were bound by the non-compete, then as I understand Chinese law, to comply with the law, there would have been some provision for payment. To comply with the technical requirements of the Chinese law, correct.  It has to specify the amount of post-employment. And so don't we, the absence of that would suggest that the employer wasn't thinking this would be a person who would be subject, in fact, to the non-compete. Otherwise, your client would have complied with Chinese law. Your Honors, the agreement, at least one of the agreements, indicates that the employee would be paid. It just doesn't specify how much. I think that's Article I, or the first paragraph, I should say, of the Labor Contract Law, talks about compensation to keep the confidentiality provisions. And so we would submit, Your Honor, that based upon the authorities I just cited, all of which indicate, for example, if the parties, quote, do not clearly agree on the specific payment amounts, then skipping a few words, it says, the non-compete clause is still binding on both parties. So the failure to specify does not give the employee a free pass. Thank you, Counsel. Thank you, Counsel. That concludes argument in this case.